COOPER *v.* PORTNER BREWING CO. *et al.*, and *vice versa.*

1. When a servant is employed in a business requiring the use of an animal, and the master furnishes an animal which is vicious and dangerous, and this fact is well known both to the master and the servant, it is the duty of the master to furnish such harness and appliances as will render reasonably safe the use of such an animal in the business to be carried on; and if, on account of the failure to furnish equipment of this character, the servant is injured by the animal, without fault on his part, the master is liable to the servant

for whatever damages he sustains by reason of such injury, if it further appears that the harness and appliances furnished were known, or could, by the exercise of ordinary diligence, have been by the master known to be unsafe or unsuitable, and the servant was ignorant of this fact, and could not have discovered it by the exercise of like diligence.

2. The petition in the present case, when taken as a whole, clearly sets forth causes of action arising ex delicto.

3. While it is permissible to embrace in one petition in different counts as many causes of action as the plaintiff sees proper, provided they are all of a similar nature, still, since the pleading act of 1893, each count must contain a complete cause of action in distinct and orderly paragraphs numbered consecutively ; and it is not permissible to make paragraphs of one count a part of another count by mere reference to the same.

Argued January 31,—Decided March 1, 1901.

Action for damages.   Before Judge Eve.   City court of Richmond county.   July 19, 1900.

*William K. Miller* and *Boykin Wright*, for plaintiff.
*Salem Dutcher*, for defendants.

COBB, J.   Cooper sued Sheehan and the Brewing Company, his petition containing three counts.   It was alleged in the first count that he was employed by the defendants to open and close their brewery, for which he was to be paid the sum of two dollars per week, and to sell their beer at a commission of fifteen cents a case of quarts and ten cents a case of pints, the beer to be delivered by petitioner to customers in the city of Augusta from a delivery-wagon.   The delivery-wagon, horse, harness, and outfit were to be furnished by defendants, properly equipped and ready for use. The beer was delivered to petitioner, and he had to account for the same by making either a report of sales or a return of the beer. He had no duty in regard to the use of the wagon, horse, and harness, except to use the same to make deliveries.   After he had been in the employ of the defendants for some time, he was notified that he was to change horses and drive separately to the wagon, one horse in the morning and the other in the afternoon, a pair of horses which had been previously used as a team.   As the horses when driven together either ran away or tried to run away, it was proposed by the defendants that they should be separated and driven single, when the disposition to run away might be corrected.   Accordingly, petitioner was ordered to drive these horses separate to the delivery-wagon.   He objected to this, but was as-

sured by defendants that the horses would not run away if driven separately, and that a strong and sound harness would be furnished him to hold them securely.    Petitioner was inexperienced and knew nothing about horses, and he was notified by defendants that he would have to have a driver and would be required to pay him himself.    Petitioner objected to this, but seeing that he could not retain his position without complying, and acting upon the assurance of defendants as aforesaid, he selected a negro man to drive the delivery-wagon and agreed with him for the amount to be paid for his services.    The driver selected began to drive the horses and continued to do so for nearly a month, petitioner believing and relying upon the assurance of the defendants that the horses were safe when carefully driven.    On one occasion when the driver was driving one of these horses, after having made some deliveries, and the horse was proceeding at the customary gait, suddenly, without fault on the part of petitioner and the driver, a portion of the harness known as the hame-strap broke and came apart, and the weight of the wagon, it having thereon a small lot of beer, drew the hame upon the collar back over and upon the shoulders of the horse.    This frightened the animal, and without warning he lurched forward and commenced to kick, and petitioner, without fault on his part, was struck by the hoof of the horse, which inflicted a violent injury upon him, from which he has been suffering ever since.    He charges that all of his injuries and suffering were caused without fault on his part by the negligence of the defendants in requiring him to use the horse with an insecure, inferior, and dilapidated harness; that the hame-strap which broke was unfit to be used as such, being old and worn out, and that this fact was unknown to petitioner; that if the hame-strap had been one suitable and proper to be used, the occurrence which resulted in injury to petitioner would not have taken place.

In the second count of the petition the facts alleged are substantially as above set forth, and in addition thereto it is charged that the defendants were under a continuing duty to furnish and keep in repair good, substantial harness, and that this duty was all the more imperative because of the character of the horse furnished by them, and that, notwithstanding this duty, they utterly failed to furnish a good harness with which to drive the horse, and knowingly furnished inferior harness, which they well knew was worn and out of

repair, all of which was unknown to petitioner. It is further alleged that, in the effort to hold the horse when he began to kick and run, the reins attached to the harness broke, that is, came apart at the place where they were stitched together, showing that the stitching was old, worn out, and rotten. The traces also broke, so that there was no means supplied the driver or petitioner to control the movements and action of the horse. The inferior and unsafe condition of the harness was unknown to the petitioner, and in using it petitioner relied upon the statement of the defendants that they would furnish a proper harness to use with this horse. In the third count of the petition the facts alleged are substantially the same as in the two preceding counts; and in addition thereto it is charged that the defendants were under a continuing duty to furnish petitioner a good harness and keep the same in repair, and they failed to keep the harness in repair, although knowing that it was out of repair, and, notwithstanding knowledge of this fact, furnished the same to petitioner and directed him to use it, the condition of the harness being unknown to petitioner. For a few days before the injury to petitioner the defendants employed a harness-maker to overhaul all of their harness, and instructed him to repair first the harness for the team. The harness-maker was proceeding to do this, when he was directed by the defendants to stop this work and go at other work; and while he was gone, without having made the repairs on the harness, the injury to the petitioner occurred. Notwithstanding the harness was out of repair, which was known to the defendants, they negligently directed the double harness to be first repaired, instead of that being used on the horse petitioner was driving, and which resulted in injury to him.

The judge sustained a general demurrer to the petition, and the plaintiff in his bill of exceptions assigns this as error.

1. If the injury to plaintiff had resulted entirely from the fact that the horse used by him was vicious, he would not have been entitled to recover, for the simple reason that, under the allegations in the petition, he was well aware of the fact that the horse which the defendants required him to use was a vicious and dangerous animal; and therefore in the use of this animal he took all of the risks which were incident to an employment where such an animal was to be driven. As we understand the claim of counsel for the plaintiff, they do not contend that he was entitled to recover on

this ground, but they base their claim for a recovery upon the ground that both plaintiff and defendants knew that the horse was vicious and dangerous, and that, this being true, it was the duty of the defendants to furnish such harness as would render the use of a horse of this character safe, and to keep in repair harness suitable to be used with a horse of this character. It is alleged that the defendants, recognizing that this duty was upon them, distinctly agreed that they would furnish harness of this character; and that, notwithstanding all this, they furnished harness which was out of repair and was unsuited for such a horse as was to be used, and that as a consequence thereof the occurrence which resulted in injury to the plaintiff took place. It appears from the allegations of the petition that the plaintiff did not desire to use the horse which the defendants required him to use, but that, rather than leave their employment, he consented to take the risk of using such a horse, provided the defendants furnished him with such harness and appliances as a reasonably prudent man would use in driving such a horse as they furnished to him. He took the risks incident to the use of a dangerous horse when equipped with harness suitable to be used with an animal of that character. But he did not take the risks incident to the use of such a horse when equipped with worn-out and inferior harness. While it appears that the plaintiff knew of the dangerous character of the horse, it does not appear from the petition that he knew that the harness was unsuitable or unsafe. On the contrary it was distinctly alleged that he was inexperienced, knew nothing about horses, was compelled to hire a driver at his own expense, and had no knowledge whatever of the defective condition of the harness; nor is there anything in the petition from which it can be inferred that the defects in the harness were so patent that they could be observed by one so inexperienced and ignorant as to these matters as the petitioner's allegations declare him to be. The petition alleged in terms that the harness was unsafe and unsuitable, and that this fact was well known to the defendants at the time it was given to plaintiff to be used. As they knew of its condition, the furnishing of it was negligence on their part. As he did not know of it, and could not find it out by the exercise of ordinary diligence, the use of the harness by him was not such negligence as would preclude him from recovering. The court erred in sustaining the general demurrer.

2. In a cross-bill of exceptions filed by the defendants error is assigned upon the refusal of the judge to sustain a special demurrer to the petition, setting up that the same was "bad for duplicity, it not appearing therein whether the same be an action ex contractu or ex delicto." There was no error in overruling this demurrer. When the petition is taken as a whole, it sufficiently appears that each count sets forth a cause of action ex delicto, that is, it is a cause of action founded upon a breach of duty growing out of the contract of employment entered into between the plaintiff and defendants. The case is clearly one sounding in tort, although the duty the breach of which constitutes the tort arose out of the contract of employment.

3. Further complaint is made in the cross-bill of exceptions, that the judge erred in overruling a motion to dismiss the case, because the petition did not set forth one cause of action in orderly and distinct paragraphs numbered consecutively; and because the petition set forth three several and distinct causes of action, separately stated therein as first, second, and third cause of action; and because neither the second nor third cause of action is set forth in orderly and distinct paragraphs numbered consecutively. As stated above, the petition contains three separate and distinct counts. The first count is composed of fourteen paragraphs numbered consecutively from 1 to 14. The second count consists of four paragraphs, the first paragraph unnumbered, the remaining three numbered from 2 to 4 consecutively. The first paragraph contains an averment that paragraphs 1 to 11 of the first count are adopted as a part of the second count. The third count consists of four paragraphs, the first unnumbered, the others numbered from to 2 to 4 consecutively; the first containing a recital that the averments of paragraphs 1 to 11 of the first count are adopted as a part of this count. In order to meet the motion to dismiss, the plaintiff amended his petition so that the second count should be numbered 1 (a) to 14 (a), inclusive, and the third count 1 (b) to 14 (b), inclusive, adding after the words adopting the paragraphs of the first count the following: "and numbering the same, as to this count, 1 (a) to 11 (a), except that petitioner does not rely in this count on the special undertaking referred to in paragraphs 5 and 6 of the first count." And as to the third count, adding the words, after the adoption clause, at the beginning of the third count: " and numbering the same as to this count 1 (b)

to 11 (b), except that petitioner does not rely in this count on the special undertaking set out in paragraphs 5 and 6 of the first count." So that the effect of the amendments is that in the first count all the paragraphs are numbered 1 to 14, the second count is numbered 1 (a) to 14 (a), and the third count is numbered 1 (b) to 14 (b).

The first count in the petition was framed in substantial compliance with the pleading act of 1893 (Civil Code, § 4961). The cause of action therein embraced was set forth in orderly and distinct paragraphs numbered consecutively, so that the motion to dismiss was not well taken as to this count. The second and third counts were not in compliance with the pleading act. While it is permissible for the plaintiff to embrace in his petition as many different counts as he may see proper, provided all of the counts set forth causes of action of a similar nature, that is, all ex delicto or all ex contractu, each count must set forth a perfect cause of action. One count can not be added to by reference to parts of another count, but each count must be embraced in distinct and orderly paragraphs numbered consecutively. It was, therefore, not permissible for the plaintiff to make a part of the second count paragraphs of the first count by a mere reference thereto; and this defect was not cured by an amendment which simply left the second and third counts in the same condition they were before, except that the eleven paragraphs of the first count were attempted to be embodied by consecutive numbers, instead of by one paragraph adopting the whole eleven. The motion to dismiss should have been sustained as to the second and third counts, unless these counts were amended so as to set forth a complete cause of action in each, in distinct and orderly paragraphs numbered consecutively, and not referring to the other count in any way for the purpose of making paragraphs of the same a part of the second and third counts by adoption or reference. See 4 Enc. P. & P. 620 (3); Bliss, Code Pl. (3d ed.) § 121. While *Hutson* v. *King*, 95 *Ga.* 272 (4), 277, was decided after the passage of the pleading act of 1893, the case originated prior to the passage of that act, the declaration having been filed in office on the 17th day of October, 1893, and the pleading act having been approved on the 15th day of December, 1893. See Acts 1893, p. 56.

*Judgment on each bill of exceptions reversed. All the Justices concurring, except Simmons, C. J., absent.*