## PORTNER BREWING COMPANY *v.* COOPER.

The charge of the court below was in substantial accord with the law governing this case, as announced by this court in 112 *Ga.* 894 ; there is no merit in any of the assignments of error touching the admissibility of evidence offered by the plaintiff ; and the verdict returned in his favor was fully warranted by the evidence, and not excessive.

Argued April 4, — Decided May 11, 1904. Rehearing denied May 24. 1904.

Action for damages. Before Judge Eve. City court of Richmond county. August 20, 1903.

*Salem Dutcher*, for plaintiff in error.

*William K. Miller* and *Boykin Wright*, contra.

Evans, J. When this case was here at the October term, 1900, this court laid down the test to be applied in determining whether or not Cooper, the plaintiff, was entitled to recover damages on account of the injuries sustained by him through the alleged negligence of his master, the Portner Brewing Company. See 112 *Ga.* 894. At the trial now under review, the presiding judge fully, fairly, and clearly charged the jury in accordance with the law as announced by this court. The trial resulted in a verdict for $5,000 in favor of the plaintiff; and the defendant company is again here, this time complaining of the admission of certain evidence, as well as of various instructions given to the jury, and also insisting that the verdict was excessive and without evidence to support it.

It appeared from the testimony of Cooper that he was employed by the brewing company in the capacity of a salesman, and that he was furnished with a horse and wagon which he used in calling upon its patrons and soliciting orders for and delivering beer and soda-water manufactured by that company. He stated that the company employed a stableman, who harnessed the horse to the wagon and drove up to the platform of the brewery, where he turned over the equipage to the plaintiff, whose duty it was "to get on the wagon and go out with the beer." Counsel for the plaintiff asked him if he "had anything to do with inspecting the harness," and the plaintiff was permitted, over the objection of the company, to testify that it was not his duty to inspect the harness nor to look "after any of the wagons or outfits that were used for delivering" the company's beer. The objection urged to

this testimony was that it was not competent for the witness to state his opinion that he was under no duty to inspect the harness, inasmuch as, "under the law, it was his duty to use ordinary care and diligence to ascertain the condition of the appliances he used." This objection was not well taken. It clearly was permissible for the plaintiff to state, as matter of fact, that under the terms of his employment he was not required or expected by his master to perform the service of looking after and caring for the horse and wagon, or inspecting the harness with a view to seeing that it was kept in repair and in a safe and sound condition. The duty of so doing was, according to the plaintiff's testimony, imposed by the company upon another of its employees, its stableman, upon whose diligence and attention to duty the plaintiff was invited to rely. It follows that the testimony objected to was not inadmissible as being the expression of a bare conclusion by the witness regarding the care and diligence he was, under the law, bound to exercise in performing the duties assigned to him by his master. What were such duties was a proper subject-matter of proof, and could be shown by any one who had knowledge of plaintiff's duties according to the terms of his employment.

One of the controlling issues in the case was whether or not the brewing company had provided the plaintiff with a harness which was reasonably safe and suitable, taking into consideration the vicious disposition of the horse he was called on to drive. The plaintiff introduced a witness who swore that a short time before the injury occurred he was employed by the company as its stableman; and during the course of his examination he said: "As far as I know about the harness, the double harness and the harness what the gray horse used was the only harness I could see in good trim; at least, wasn't none of them hardly in good trim." Counsel for the company made a motion to rule out this testimony, on the ground that it was "irrelevant, as not bearing on the condition of the particular set of harness used by the plaintiff at the time of his injury." We think it had at least some relevancy. It appears that the harness "the gray horse used" was not the set furnished the plaintiff; and accordingly, he must have been given one not "in good trim" at a time shortly before he was injured. The evidence also discloses that no attempt to put the

harness in good condition was made by the company until a few days prior to the plaintiff's injury, and up to that time the set of harness assigned to him had not been overhauled, notwithstanding the horse he drove was wild and difficult to handle. The length of time this harness was allowed to remain not "in good trim" tended to illustrate the question whether the defendant complied with its duty as master to provide the plaintiff with a harness which he could with safety use in driving the vicious animal by which he was injured; and the fact that one of its stablemen knew that only "the double harness and the harness what the gray horse used" were in good condition had an important bearing on that question.

In one of the grounds of the motion for a new trial error is assigned upon the refusal of the court "to rule out so much of the testimony" of another of the plaintiff's witnesses " as related to a general insufficiency of defendant's harness." But as the testimony referred to is not, either literally or in substance, set forth in this ground of the motion, we can not undertake to pass upon this complaint. *Graham* v. *Baxley*, 117 *Ga.* 42.

The charge of the court is assailed by many assignments of error. Some of these set forth the complaint that certain instructions excepted to were incorrect, in that the court should in the same connection have charged other propositions of law applicable to the case. This is not the proper way to bring under review a complaint that the court omitted to instruct the jury as to pertinent matters to be considered by them. *Lucas* v. *State*, 110 *Ga.* 756; *Roberts* v. *State*, 114 *Ga.* 450; *Jenkins* v. *National Union*, 118 *Ga.* 587. A number of the instructions complained of were precisely in accord with the law as laid down in the Civil Code, and as announced by this court when the case made its first appearance here. Only two of the charges excepted to seem to require special notice. One of these, given at the request of the plaintiff's counsel, was as follows: " In order to recover, it is true that Cooper must prove that the master knew of the alleged defects in the harness, or by the use of ordinary care could have known of them, and that he (Cooper) did not know or by the use of ordinary care could not have known the same." The criticism made upon this instruction is, that the court erroneously charged the jury that Cooper could recover "in two specified events: 1st,

if plaintiff did not know of such defects, or, 2dly, if plaintiff by the exercise of ordinary care could not have known thereof." In other words, the complaint is that the court made use of the disjunctive " or," instead of charging in the conjunctive that it was incumbent upon Cooper to show that he " did not know *and* by the use of ordinary care could not have known " of the alleged defects. While the charge was not altogether free from error, we do not think it was calculated to mislead the jury into the belief that although Cooper did in fact know the harness was defective, he could nevertheless recover if the defects were not such as could have been discovered by the exercise of ordinary care. Furthermore, the defendant did not even contend that Cooper knew the harness was defective, nor was there any evidence to warrant the conclusion that he did. This being so, the defendant could not have been prejudiced by the slight inaccuracy in the charge pointed out by its counsel.

The other charge with which we feel called on to specially deal was in the following language: " If, upon reviewing the testimony, you find that the plaintiff had equal opportunities — equal means of ascertaining the defect — that the master had, then the plaintiff could not recover, and your verdict would be for the defendant." The objection made to this charge is that it " intimates, or would naturally be understood by the jury as intimating, that the testimony showed that a defect did exist in the appliances in question." When considered with reference to the connection in which this instruction was given, it is not, we think, open to the criticism made upon it. The court was charging the jury as to the right of the plaintiff to recover " if the evidence [disclosed] that the harness was not reasonably safe and suited — that it was defective," and " the defect was known to the master or by the exercise of ordinary care could have been ascertained; " and the instruction excepted to amounted to no more than a caution to the jury that even though the evidence showed that the harness was defective, as claimed by the plaintiff, he would not be entitled to recover if his means of ascertaining this fact were equal to those of his master. Besides, the court in another portion of his charge distinctly instructed the jury that the burden was on the plaintiff to prove that the harness was defective.

The plaintiff proved his case as laid; and though the testimony was conflicting upon the controlling issues involved, a finding in his favor was fully warranted. Nor was the verdict excessive. At the time the plaintiff was injured he was but twenty years of age, and, according to his testimony, was earning between twelve and fifteen dollars per week, he being allowed, in addition to a fixed weekly wage, commissions on sales made by him. His injuries consisted of "a very serious fracture of both bones of his right leg, . . a compound comminuted fracture, . . the bones [being] broken in several places and the flesh lacerated." The attending surgeon set the limb shortly after it was broken, but at the end of two or three weeks noticed that the bones had not united. "The wound was opened and the bones freshened at the ends, . . to see if they would not unite," the limb being then encased in plaster. This second operation did not, however, prove successful; so, after the lapse of some time, the surgeon again opened the wound and "sawed off the ends of the bones for probably half or three-quarters of an inch; then put them together" and placed the limb in a plaster cast, "with the result of getting a good bony union the third time." In consequence of the bones of his right leg being shortened, the plaintiff necessarily has a permanent "limp in his walk," the length of that limb being "practically three-quarters of an inch" shorter than his left leg. After the last operation, the plaintiff spent some months in the hospital, suffering from this injury. He testified at the trial that he continued to suffer therefrom, especially at night, when there was a kind of throbbing in his right leg which caused him to take morphine; and that while the bones were knitted, the strength of his injured limb was not equal to that of the other; that he could not turn on his right leg as he could on his left; and in bearing his weight on his injured limb "it feels like it is crushed inside — like it is going to give in." In view of this evidence as to the permanent character of the injury received and as to the suffering the plaintiff has endured and may continue to experience, we are inclined to the opinion that $5,000 was not an excessive amount to award him as damages, taking into consideration his earning capacity, his age, and his expectancy of life at the time of the injury.

*Judgment affirmed.     All the Justices concur.*