McDANIEL v. CHARLESTON AND WESTERN CAR. R. R.

Railroads—Fellow-servants—Negligence—Nonsuit.—A road master whose duty it is to attend all wrecks on his division, and who has control of the wrecking train while at work, is a fellow-servant with the conductor of the wrecking train, with whom he had an agreement to divide the wrecking force and train, and he cannot recover of the railroad company for injuries received by reason of the engineer of the wrecking train, working his part of the train under directions of the conductor, striking the detached car on which the road master was standing, and nonsuit properly granted.

Mr. Justice Gary *dissents, because he thinks the evidence susceptible of more than one inference.*

Before Townsend, J., Laurens, January, 1904. Affirmed.

Action by S. G. McDaniel against Charleston and Western Carolina Railroad Co. From order of nonsuit, plaintiff appeals.

*Mr. N. B. Dial,* for appellant, cites: *Testimony was relevant to facts in dispute:* 21 S. C., 93; *and it was for jury to weigh truth and sufficiency:* 21 S. C., 101; 25 S. C., 182; 55 S. C., 180; *Brodie* v. *R. R.,* 61 S. C.; *Rutherford* v. *R. R.; Boyd* v. *R. R.; Carson* v. *R. R.; Scott* v. *R. R. Nonsuit not proper unless there is failure of evidence tending to show master's negligence:* 23 S. C., 526; 19 S. C., 20; 21 S. C., 541; 112 U. S., 377; 22 S. C., 563; 18 S. C., 270; 48 S. C., 190; 40 S. C., 106. *Road master and conductor were not fellow-servants:* 51 S. C., 96, 150; 39 S. C., 507; 55 S. C., 190, 488. *Whether appellant assumed risks of employment is for jury:* 52 S. C., 438; 55 S. C., 101; 60 S. C., 18.

*Mr. S. J. Simpson,* for appellant, cites: *All officers with train were appellant's fellow-servants:* 1 McM., 385; 25 S. C., 135; 40 S. C., 104; 39 S. C., 507; 51 S. C., 96; 66 S. C., 99.

*Messrs. Simpson & Cooper,* also for appellant, cite: *Whether the servant when exercising his duties was a fellow-servant with injured person, is a question of law:* 51 S. C., 96; 39 S. C., 507; 40 S. C., 104; 48 Am. St. R., 259.

November 9, 1904. The opinion of the Court was delivered by

Mr. Justice Woods. This action for damages rested on evidence to this effect: While plaintiff was engaged as road master in clearing a wreck from defendant's roadway, the other portion of the work train ran against the detached flat car on which he was standing with such violence that he was thrown from the car and injured. The work train was operated by a conductor and engineer. Plaintiff, as road master, worked under the direction of the engineer of the railroad, and the conductor of the work train ran his train under orders of the train master; but the plaintiff was familiar with the rules of the railroad company, which required him "to attend in person all accidents" on his division, and provided that, "Conductors and engineers of work trains will receive instructions from the road master in regard to work to be done by their train." On this occasion, plaintiff was actually left by a superior officer in charge of the entire work of removing the wreck. Subsequently, he and the conductor of the work train, of their own motion, agreed on a division of the work, and in pursuance of the agreement the work train was parted so that each should have some of the cars. The locomotive was attached to the cars the conductor was using. The accident occurred from these cars being moved violently without warning against the car which the plaintiff was using and on which he was standing.

The Circuit Judge ordered a nonsuit on the ground that if the injury was due to negligence, it was the negligence of a fellow-servant. The plaintiff's exceptions, as we understand, really involve three propositions which he undertakes to sustain: First, the conductor operating the train was the

superior of the road master in the conduct of the work, and had a right to direct or control his services. There is no evidence to sustain this statement; on the contrary, the plaintiff positively confutes it. Second, the plaintiff and the conductor and engineer were engaged in different departments of labor. In the mere running of the work train from place to place, doubtless, to avoid interference with other trains, the conductor received orders from the train master; but when actually at work, the rules placed the conductor and crew under the direction of the road master and in his department of labor. Third, the plaintiff and the conductor and engineer were engaged about a different piece of work. Obviously removing different pieces of the wreck did not constitute being engaged about different pieces of work, within the meaning of section 15, article IX., of the Constitution.

The common enterprise—the piece of work—was the removal of the wreck. The engine and cars were instrumentalities provided for the purpose, to be used by the conductor and engineer under the plaintiff as their superior, just as jack-screws and shovels were to be used by others, and the negligent moving of the train stands on the same footing as would the negligent placing of a jack-screw. But aside from the rules of the company and the other evidence indicating that the plaintiff and conductor and engineer were engaged as fellow-servants about the same piece of work, the plaintiff testified that he voluntarily agreed with the conductor as to what part of the wreckage each should remove, and the accident occurred while they were working about the common enterprise as fellow-servants in conjunction with each other in pursuance of the agreement. Of the many cases on the subject, it is only necessary to refer to *Wilson* v. *Railway Co.,* 51 S. C., 79, 28 S. E., 91, and *Koon* v. *Railway Co.,* 69 S. C., 101.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

7—70.

Mr. Justice Gary, *dissenting*. This is an action for damages on account of injuries sustained by the plaintiff through the alleged negligence and recklessness of the defendant in the operation of its train of cars. The complaint alleges that while the plaintiff was in the discharge of his duties as road master in assisting to load the debris which had been caused by a wreck, on flat cars, and while standing on a flat car, without any warning whatever, the defendant, its agents, servants and employees, pushed its engine and cars violently, negligently and recklessly against the car whereon the plaintiff was standing, and violently jerked or knocked the said car, and threw the plaintiff to the ground, inflicting upon him serious injuries.

At the close of plaintiff's testimony, the defendant made a motion for a nonsuit, which was granted, on the ground that the injuries were caused by the act of a fellow-servant. The appeal is from the order of nonsuit.

If the testimony was susceptible of more than one inference as to the relation in which the plaintiff stood to the person inflicting the injuries, then this question should have been submitted to the jury. In *Wilson* v. *Ry. Co.,* 51 S. C., 79, 28 S. E., 91, the Court uses this language: "The second question raised by the exception is: Was there error on the part of the presiding Judge in not submitting to the jury the question whether the plaintiff and the employees of the defendant, through whose negligence the injury to the plaintiff is alleged to have been sustained, were fellow-servants? Whether an engineer, brakeman or switchman is, when exercising his ordinary duties, a fellow-servant with the car-cleaner, is a question of law. But whether, in a particular case, either of them was engaged in performing certain acts, which the law requires of the master, and which would prevent them from being fellow-servants, is a question of fact, to be determined by the jury. The question as to who are fellow-servants is a mixed question of law and fact. It is for the Court to define the relation of fellow-servants, but it

is for the jury to determine whether the employees in a particular case come within the definition."

Section 15, art. IX., of the Constitution, contains the following provisions: "Every employee of any railroad corporation shall have the same rights and remedies for any personal injury suffered by him from the acts or omissions of said corporation, or its employees, as are allowed by law to persons not employees, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow-servant engaged in another department of labor from that of the party injured, or of a fellow-servant on another train of cars, or one engaged about a different piece of work."

In order to determine whether the undisputed testimony showed that the plaintiff was a fellow-servant with those operating the train of cars that caused the injury, it will be necessary to review the testimony relating to this question.

The plaintiff testified as follows: "Q. What is the duty of a road master? A. To look after the general repair of the track, bridges, trestles, culverts, everything in the roadway department. Q. Ditches? A. Ditches; and distributing material, making requisitions for different kinds of material. Q. Looking after the physical part of the road? A. Looking after the road to see that material was distributed, and to keep a general supervision over the track and bridge force. Q. From whom do you get your orders? A. Engineer of roadway. Q. Who was he at the time? A. Mr. A. H. Porter. Q. He was engineer of what? A. Roadway. Q. He was your next superior officer? A. Yes, sir. Q. What position does Mr. Reese occupy? A. He was conductor of the work train, and while at Greenwood we talked the matter over together as to the best way to get this work done and get him away from there so he could get to Augusta, and we agreed to divide up the force. He was to take a portion of it, as many as he needed, and put that coal car on the track.

He had the trucks to lower on the wrecking car or flat car, I don't remember which now, and I was to take another portion of the force and finish loading this scrap iron next, lying scattered around from these burnt cars.    Q. From whom did Mr. Reese get his orders; whose jurisdiction was he under? A. Mr. Reese got his orders in regard to moving trains from the train master.    Q. What was Mr. Reese's business?    A. So far as moving trains was concerned?    Q. I mean generally what his business was?    A. He carried out the instructions of his superior officer.    Q. What position did he hold? A. Work train conductor.    Q. Where did that work train work?    A. It worked all over the whole system of the C. & W. C.    Q. How much jurisdiction did you have?    A. I had 112 miles.    Q. That all of the system?    A. No, sir; there is 345 miles of the system.    Q. You mean other sections besides yours?    A. There are three divisions, and I had the third division.    Q. Mr. Reese got his instructions from the train master?    A. Yes, sir, the train master.    Q. His business was to operate the train?    A. Yes, sir; he was in full charge of the train.    Q. You have anything to do with the train?    A. Not a thing.    Q. Nothing to do with the train?    A. No, sir.    Q. Nothing to do with moving the train?    A. No, sir.    Q. At any time did you have anything to do with the moving of that train?    A. No, sir.    Q. Your duty was to look after the physical part of the road?    A. Yes, sir.    Q. Were you familiar with rule 824, which reads as follows.: 'You will attend in person all accidents on your division, with ample force necessary to clear the track,' etc. ? A. Yes, sir.    Q. That was one of your rules?    A. Yes, sir. Q. Do you know whether this was one of the rules with reference to work trains?    'Conductors and engineers of work trains will receive instructions from the road master in regard to work to be done by their train?'    A. Yes, sir.    Q. After he (Porter) left, you were in charge?    A. Yes, sir; I was in charge of the work, the direction of the work.    Q. Didn't your charge of the direction of that work cover the general direction of all the instructions in reference to that

work, including the work train? A. I had nothing to do with the moving of the train whatever. Q. Who had anything to do with the movement of the train? A. The conductor and engineer. Q. Who did the conductor report to? A. He reported, so far as the work went, to me, and so far as the movement of the train, all the train orders he got from the train master. Q. You mean this, do you not, that when you want to go to a spot from Laurens or from Greenwood, or from any other distant point, he moves the train under a train dispatcher's order, but around the work was he not under your supervision or directions? A. About the movement of the train, he made his own signals, and whenever he wanted the train moved, it was his duty to signal the engineer; that was the conductor's duty to make his train go back and forward. Q. How did Mr. Reese get his instructions about moving that train? A. From the train master. Q. How, by mail? A. A train dispatch, a telegraph order, got them several times each day. As the work progressed, he may want to move back and forth over the road, and one order will not cover a day's work. Q. He was under the train dispatcher, you say? A. The train master, when he comes in to lie up at night, the rules require that he report that his train is clear of the main line on a side track, and will move to-morrow between such and such a point—say, for instance, between Laurens and Ora. Then next morning, when he reports for the work, the train master will wire him that engine so and so will work as an extra betwen Laurens and Ora. Q. You had nothing to do with that? A. Not a thing in the world. He was required to sign that order and transfer it back by wire to the train master."

It will thus be seen that the facts were in dispute as to whether the plaintiff was a fellow-servant with those in charge of the train of cars. There is testimony tending to show that the plaintiff and the conductor of the train received their instructions from different superior officers—the plaintiff working under the direction and control of the engineer of roadway, and the conductor receiving his orders from

the train master.    This testimony tended to show that they were engaged in different departments of labor.

His Honor, the presiding Judge, therefore, erred in granting the nonsuit.