JOHN R. WALLACE and CYRUS H. WALLACE, plaintiffs in error, *vs.* JAMES M. SPULLOCK, Superintendent, etc., defendant in error.

[LUMPKIN, J., did not preside in this case.]

1. It is not competent to prove the sayings of a third person, who is himself a competent witness. Whatever he may know touching the case should be conveyed to the jury under the sanction of an oath, not as hearsay.

2. In a suit to recover damages from the State, for the escape and loss of a slave, the Court charged the jury, "that the State was liable to the owner of a slave for permitting him, without the owner's authority,

Wallace and Wallace *vs.* Spullock.

to travel on the cars of the State Road, and if the slave, by that means, escaped beyond the reach of the owner, he had a right to recover the proven value of the slave at the time of the escape. That when the marks of the African race were discernible by ordinary observation, the conductors or agents of the road were bound to notice them, and if they did not, it was such negligence as would make the road liable. But if the slave bore none of the distinctive features or marks of the negro, or so little as to escape the notice of an ordinary observer; if, even in the exercise of proper caution and diligence, the agent of the road could not have detected any of the marks of the negro, then there was no such negligence as would make the road liable:" *Held*, that the charge was right.

3. The Court below is right in sustaining a verdict and refusing a new trial when the verdict accords with the law and facts of the case.

Action on the case, in Fulton Superior Court. Tried before Judge BULL, at the November Term, 1860.

This was an action brought by John R. Wallace and Cyrus H. Wallace against James M. Spullock, as Superintendent of the Western and Atlantic Railroad, to recover damages for the loss of a negro boy slave by the name of Sam, which the plaintiffs alleged was their property, and worth $1600 00. The plaintiffs further alleged, that on the night of the 20th of December, 1856, without their authority or consent, the said negro boy was transported over said railroad from Atlanta, Georgia, to Chattanooga, Tennessee, on the passenger train, whereby he escaped from the plaintiffs and became wholly lost to them.

The defendant pleaded not guilty.

On the trial of the case the plaintiffs proved by Samuel T. Downs that the boy Sam was the property of the plaintiffs, and worth about $1200 00; that on the morning of the 25th of December, 1856, he saw the negro at Chattanooga, Tennessee, at which place the night passenger train had arrived at five or six o'clock on that morning; that being conductor of a train on said railroad, he left Chattanooga a short time after seeing the boy Sam, and on arriving at Atlanta, reported to the plaintiffs what he had seen; that afterward he saw the boy in Chicago, Illinois, where he passed as a white man, and was taking drinks at the bar

with white men; that the boy Sam was of light complexion, straight black hair, and to a casual observer, exhibited no negro blood; that from the nose down, and about the mouth and chin, and the lower parts of his face, he showed indications of negro blood.

The plaintiffs also proved by Thomas A. Thomas that the boy was plaintiffs' property, and worth about $1200 00; that plaintiffs kept him employed about their store, to do whatever he was directed to do; that sometimes he sold goods, made out bills, and received money; that he was of light complexion, and had straight hair.

In behalf of plaintiffs, GEORGE W. CENTRE testified, that he was clerk for plaintiffs, and that Sam was engaged about the store, as testified by Thomas, except that the witness never knew him to make out bills; that he last saw Sam on Saturday evening previous to Christmas, 1856; that Sam closed up the store that evening, and was missing next day; that when the train arrived from Chattanooga, witness went to meet, and there saw Mr. Samuel T. Downs, the conductor.

Plaintiffs proposed to prove by Centre, that on meeting Downs the latter said, "that he saw the boy Sam that morning, in Chattanooga, before he left that place."

This evidence being objected to, was repelled by the Court, and counsel for plaintiffs excepted.

It was admitted that a demand for settlement was made by plaintiffs before the suit was brought, as required by the statute.

In behalf of defendant, it was shown by the testimony of a number of witnesses, that they had seen Sam about the store of the plaintiffs for twelve months or more, and considered him a white man; that they had dealt with him as a clerk in the store, bought goods from him, and paid him the money for them; that his complexion was light, his hair straight, and that to ordinary observation his appearance was that of a white man.

One of the witnesses had been in the habit of calling him Mr. Wallace, and regarded him as a member of the firm.

Amongst other things, the presiding Judge charged the

jury, " that the State, as well as an incorporated company, was liable to the owner of a slave for permitting him, without the owner's authority, to travel on the cars of the State Road, and if the slave, by that means, escaped beyond the reach of the master, he had a right to recover the proven value of the slave at the time of the escape.   That when the marks of the African race were discernible by ordinary observation, the conductors or agents of the road were bound to notice them, and if they did not, it was such negligence as would make the road liable.   But if the slave bore none of the distinctive features or marks of the negro, or so little as to escape the notice of an ordinary observer; if even in the exercise of proper caution and diligence, the agents of the road, in charge of the train, could not have detected any of the marks of the negro, then there was no such negligence as would make the road liable."

The jury returned a verdict in favor of the defendant.

Counsel for plaintiffs then moved for a new trial on the grounds :

1st. Because the Court erred in repelling the evidence of George W. Centre as to the sayings of the conductor, Downs·

2d. Because the Court erred in charging the jury as hereinbefore set forth.

3d. Because the jury found contrary to the evidence and the law of the case.

The Court overruled the motion, and refused the new trial, and the plaintiffs assign error upon that decision.

GLENN & COOPER, for plaintiffs in error.

L. E. BLECKLEY, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The first exception to the judgment of the Court below, refusing a motion for a new trial is, that the said motion should have been granted on the ground, that upon the trial the Court erred in rejecting the sayings of Downs.   For aught that appears, Downs was a competent witness, and

whatever he may have known touching the case, should have been conveyed to the jury under the sanction of an oath, not as hearsay. The evidence was properly rejected. The charge of the Court, as embodied in the statement, is also assigned as error.

We think any rule, applicable to such a case, more stringent than that given to the jury in this charge, would be exceedingly unjust to railroad companies, or other parties engaged in the transportation of passengers. Especially would the rule operate oppressively when, as in this case, the owners of a slave, scarcely at all distinguishable in hair, complexion and feature from a free white person, employed him in a way in which usually only white persons are employed, viz: as a salesman in their store. Some persons, it appears, dealt with him there, believing him to be a clerk, others mistaking him for a member of the firm, and calling him Mr. Wallace. It is not improbable that the conductor in charge of the train on which this slave escaped, may have seen him so employed in the store of plaintiff, and may thus have been confirmed in the impression made by his appearance that he was of the white race. There is no evidence whatever that any employee of the defendant connived at the escape. To prescribe any more stringent rules in such cases would be to enjoin upon railroad conductors the duty of questioning as to the social status of every white passenger having a dark complexion, and refusing to give him conveyance unless he could prove his descent from Caucasian parents.

We think the Court was right in sustaining this verdict upon the law and the facts.

Let the judgment be affirmed.