## 16585. BLACK *v.* THE STATE.

1. An indictment for involuntary manslaughter in the commission of an unlawful act, containing three counts which differ only as to the nature of the specific unlawful act set out as the cause of the same homicide, charges but one offense; and sufficient proof of any one or more of such counts authorizes a general verdict of guilty.

2. Where one operates an automobile upon a public street or highway of this State at a rate of speed penalized by statute, or while he is under the influence of intoxicating liquors, and, in consequence thereof, he kills a human being without any intention to do so, he is, under that view of the case most favorable to him, guilty of involuntary manslaughter.

3. "If an involuntary killing happens in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being, the offense is murder." *Gadsden* v. *State,* 134 *Ga.* 785 (2) (68 S. E. 497).

DECIDED OCTOBER 6, 1925.   REHEARING DENIED NOVEMBER 10, 1925.

Involuntary manslaughter; from Cobb superior court—Judge Blair. April 25, 1925.

*W. C. Munday, H. B. Moss,* for plaintiff in error.

*John S. Wood, solicitor-general,* contra.

LUKE, J. Black was convicted of involuntary manslaughter in the commission of an unlawful act. He excepts to the judgment overruling his motion for a new trial, which was based on the usual general grounds.

The first count of the indictment alleged "that the said O. L. Black, on the 25th day of January, 1925, in the county aforesaid, with force and arms, did unlawfully then and there, without any intent to do so, but while in the commission of an unlawful act of driving and operating a certain Buick touring automobile, the same being then and there a motor-vehicle, over and upon the public highway of said county known as the Marietta and Atlanta public road, at a greater rate of speed than thirty miles per hour, he, the said accused, did then and there run said automobile against a certain pole, a certain tree, a certain embankment, and into and over a certain ditch, the same being located on a certain curve near Locust Grove schoolhouse, thereby wrecking said motor-vehicle, and, in so doing, he, the said accused, did hurl and throw one Mary Lee King, a human being, violently from said automobile, and did then and there turn said automobile over on her, the said Mary Lee King, thereby inflicting upon her, the said Mary Lee King, a certain mortal wound and certain mortal wounds, upon her head, body, and members thereof, from which she, the said Mary Lee King, then and there died."

The second count was identical with the first except as to the unlawful act therein set out, which consisted in the operation of the automobile at a rate of speed in excess of ten miles per hour while approaching and traversing a designated sharp curve upon the same highway. The third count, which was otherwise identical with the other two, charged the unlawful act of operating an automobile upon a public highway while under the influence of intoxicating liquors.

There was evidence tending to show that on the 25th of January, 1925, the accused and one Edward Fox, the owner of the machine, accompanied by the deceased and her sister, went from Atlanta to Marietta. Fox drove the car to Marietta, Black undertook to drive it back to Atlanta. Both were, if not intoxicated, at least under the influence of intoxicating liquors. The witnesses

vary as to the speed at which the car was running on the return trip, the lowest estimate being from thirty to forty miles an hour, the highest being from fifty-five to sixty miles an hour. All are agreed that the speed was unnecessarily, if not unusually, fast. In attempting to round a sharp curve on the highway at that rate of speed the car was wrecked, substantially as set out in the indictment, the occupants thereof were thrown out and maimed, and one of them, Mary Lee King, sustained an injury from which she died on the following day. The jury returned a verdict finding the accused guilty on all three counts, and fixing his penalty at from one to two years in the penitentiary.

1. The evidence abundantly authorized the verdict. Although the indictment contains three counts, it charges but one offense, one homicide, and is, in substance, the same as if all three unlawful acts resulting in the one homicide had been charged in one count. The form of the indictment is a matter for the pleader. The law looks to its substance. Under either form of indictment a general verdict of guilty would be authorized by proof of any one or more of the alleged unlawful acts, together with proof of the other essentials of the offense charged. *Tooke* v. *State, 4 Ga. App.* 495 (3) (61 S. E. 917).

2. In defining the particular grade of involuntary manslaughter here in question, the code provides: "Involuntary manslaughter shall consist in the killing of a human being without any intention to do so, but in the commission of an unlawful act,  . .: provided, that where such involuntary killing shall happen in the commission of an unlawful act which, in its consequences, naturally tends to destroy the life of a human being,  . .  the offense shall be deemed and adjudged to be murder." Penal Code (1910), § 67. The act of 1921 (Ga. L. 1921, p. 255), regulating the use of motor-vehicles in Georgia, makes it an indictable offense to operate any motor-vehicle upon any public street or highway of this State at any rate of speed in excess of thirty miles per hour. While approaching or traversing a sharp curve on a highway, it is an indictable offense to operate the machine at a greater speed than ten miles per hour. By section 6 of that act it is made an indictable offense for any person, "while under the influence of intoxicating liquors or drugs," to operate any motor-vehicle upon any highway of this State, regardless of the rate of speed. The purpose of these

several regulations of motor-vehicles is the protection of the lives and limbs of all persons upon or using such streets and highways, not only those who may be met, overtaken, or passed by the driver, but as well for the protection of those who may accompany him. The view of the law and evidence in point most favorable to the accused would, therefore, seem to demand the verdict returned against him.

3. In the instant case the accused might well have been tried for the offense of murder, leaving it to the jury to say whether the unlawful acts, with all their attendant facts and circumstances, rendered the transaction one which, in its consequences, naturally tended to destroy human life. But the State having adopted the view of the evidence most favorable to the accused, and having put him upon his trial for the minor offense of involuntary manslaughter, instead of giving the trial jury an opportunity to say if the offense was murder, the accused will not be heard to complain that he might have fared worse.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*