SCOTT *v.* WIMBERLY.

No. 11999. JANUARY 15, 1938. REHEARING DENIED FEBRUARY 16, 1938.

*Clement E. Sutton,* for plaintiff.

*Earle Norman* and *W. A. Slaton,* for defendant.

RUSSELL, Chief Justice. A caveat was filed by a husband to the probate in solemn form of the will of his wife, in which she devised him one dollar. Lack of mental capacity to make a will was alleged. An amendment to the caveat was offered, in which undue influence and coercion were alleged. On objection this amendment was disallowed. The trial resulted in a verdict in favor of the propounder. A motion for new trial was overruled, and the caveator excepted. Error was assigned also on the disallowance of the offered amendment to the caveat.

■ The court erred in disallowing the amendment, which was as follows: "Caveator says that Mrs. Mary Pope Scott, his wife, had been in a condition of mind where she was unable to transact business or attend to her own affairs; that, due to the mental trouble from which she was suffering, she had not will or mind of her own, and her actions were easily influenced by the acts of others; that from ————— 1917 until the day of her death on August ——, 1936, she was a constant inmate of sanitariums for the treatment of mental diseases, except at such times as she was allowed to pay visits to her relatives; that her only sister, Mrs. Effie Pope Wimberly, was with the deceased in the intervals when she was not in the sanitarium, and exercised complete domination and control of all her actions; that the will as drawn was by the attorney who had long represented Mrs. Effie Pope Wimberly and a former partner of her deceased husband; that Mrs. Mary Pope Scott was caused to execute the alleged will by the suggestion and undue influence of Mrs. Effie Pope Wimberly, the propounder and a legatee under the will, exerted upon the mind easily subject to influence because of the disease from which she was suffering; and that the will as executed was and is not the last will and testament of Mrs. Mary Pope Scott, but was procured by undue influence exerted by the said Mrs. Effie Pope Wimberly." In *Davis* v. *Frederick*, 155 *Ga.* 809, 811 (118 S. E. 206), the allegations as to undue influence were that the will was not freely and voluntarily executed by the testator, "but was the result of the fraudulent practices upon him by Edwin S. Davis, who drafted the will," that Mrs. Cora Wilson and Davis, who was named as executor, and who were large beneficiaries under the will, were not related to the testator; that Mrs. Wilson, at a time when the testator was not transacting any business whatever, directed and commanded the testator to make the alleged will, prepared the will and had the testator to sign the same, and did procure the signature of the testator to the will through fraudulent practices and duress. This court held that in the absence of special demurrer the caveators had the right to introduce evidence in support of the ground of undue influence. We think the amendment in the case at bar alleged sufficient facts to authorize the admission of evidence on the issue of undue influence. The allegations went further than those in *Field* v. *Brantley*, 139 *Ga.* 437 (3) (77 S. E. 559), where a "general averment" of un-

due influence was held insufficient. The same statement is true with reference to the cases of *Jones* v. *Robinson,* 172 *Ga.* 746 (158 S. E. 752), and *Baucom* v. *Harper,* 176 *Ga.* 296 (168 S. E. 27).

█ Complaint is made that the court, after charging the jury on the subject of testamentary capacity, instructed them: "The attestation of the will before you for your consideration is in due form and recites the statutory requirements. I charge you that this attestation clause raises a presumption that the will was executed as required by law, and as to whether that presumption has been overcome is entirely for you to determine from all the evidence, facts and circumstances of this case; both by the evidence produced by the propounder and the evidence produced by the caveator." It is alleged in this ground: "There was no issue involved in the case except that of testamentary capacity. This part of the charge, coming, as it did, immediately after the instruction as to testamentary capacity, could mean only one thing to the jury, and that is when the attestation clause was shown to be correctly worded, that a presumption arose that the will was in all respects executed according to law; whereas one essential element to be shown by the propounder is mental capacity of the testatrix at the time of execution, and as to this fact there is no presumption in favor of the propounder, but the burden rests on her throughout the case to show mental capacity. This charge was especially error under the peculiar facts of this case, for it was shown by the witnesses attesting the will that they had no knowledge whatever of the mental condition of Mrs. Mary Pope Scott, at the time of attestation. . . The effect of this instruction was to convey to the jury that the presumption arising in favor of the propounder related to proper attestation and to mental capacity as well, and said instruction was and is error." It is true, as alleged in this ground, that neither of the witnesses to the will testified as to the mental condition of the testatrix, and one of them testified that "he had heard that Mrs. Scott had undergone treatment for mental trouble." However, immediately following the testimony of the living subscribing witnesses (one being dead) the propounder introduced the testimony of several witnesses, whose testimony was to the effect that while the testatrix was obsessed with the idea that she had committed an unpardonable sin and that her soul was lost, yet in their opinion she was capable of making a will. One of these wit-

nesses testified that she came into his office and talked with him while the will in question was being drafted in an office near by, and that he considered her competent to make a will. The instruction quoted is in accord with the holding of this court in *Underwood* v. *Thurman,* 111 *Ga.* 325 (3) (36 S. E. 788), that "When the attestation clause in such an instrument recites all the facts essential to its due execution as a will, 'and it is shown that the alleged testator and those whose names appear thereon as witnesses actually affixed their signatures to the paper, a presumption arises that it was executed in the manner prescribed by law for the execution of wills; and this is so though there may be on the part of one or more of the witnesses a total failure of memory as to some or all of the circumstances attending the execution." The instruction complained of is not subject to the criticism that the presumption created by the attestation clause related to the testamentary capacity of the testatrix as well as to the formality with which the will was signed and witnessed. As stated by the court in this charge, "this attestation clause raises a presumption that the will was *executed*" as required by law.

■ Error is assigned on the following instruction to the jury: "I charge you that in the determination of this case that the condition of the mind at the time of the execution of the will must determine whether or not the will is valid. Testimony has been admitted of the condition of the mind both before and after that time; but I charge you that you should consider such evidence only for the purpose of determining what the condition of her mind was at the time of the execution of the will. That the mind of the testatrix was affected at a time before the will was executed would not authorize you to find against the will unless you should believe that her mental condition at the time the will was made was so bad as to amount to a total lack of reason. Caveator alleges that the testatrix, Mrs. Mary Pope Scott, was mentally incapable of executing a will. I charge you that in order to make a will valid, a person is required only to have such mental capacity as will enable her to know her relations to those persons related to her by blood and affection, what property she has, and to have a knowledge that a will is a disposition of property to take effect at death and to form and express by words or writing a definite intention to dispose of her property in a definite way. In order to avoid a

will the testatrix must be entirely bereft of reason or must be imbecile. Although the mind of testatrix might have been affected, unless she was totally bereft of reason, or she was imbecile, the will would be good. If the testatrix was insane as to some particular matter or subject, if she was not totally bereft of reason and was not imbecile, and the will was not produced by the particular thing about which her mind was affected, the will would be good." The assignment of error is: "Movant shows that the court correctly stated the requirements which would enable one to execute a valid will, namely, such mental capacity as would 'enable testatrix, to know the relationship of those persons about her, to be familiar with her property and to understand the nature of a will. The converse of the same proposition likewise holds true; and if a person fails to possess the necessary mental capacity to execute a valid will, measured by the standards defined by the court, the instrument should be refused probate. The court, however, repeatedly instructed the jury that 'in order to avoid a will the testatrix must be entirely bereft of reason or must be imbecile,' though the instruction was not couched each time in identical language. Movant shows that this does not correctly define the standard of lack of mental capacity as required in Georgia, and that it is not necessary for caveator to show that a person is 'entirely bereft of reason' nor 'an imbecile,' before probate of a will should be denied, since the terms 'entirely bereft of reason' and 'imbecile' convey but one idea, and that of total insanity, whereas the jury might believe that the testatrix while possessing some slight reason did not yet possess sufficient mentality to make a will. This instruction was error for the reason that it placed a much greater burden on the caveator to show lack of mental capacity, than it did on the propounder to show possession of mental capacity."

It appears that immediately preceding the excerpt last set out the court charged the jury as follows: "A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and affection, and also of conceiving and expressing by words, written or spoken, or by signs, or both, an intelligent scheme of disposi-

tion. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." When considered in connection with the other instructions of the court on the subject of testamentary capacity, the statement that the jury should not find against the will unless she was "totally bereft of reason," or "imbecile," does not require the grant of a new trial. *Morris* v. *Stokes,* 21 *Ga.* 552 (5); *Gardner* v. *Lamback,* 47 *Ga.* 133 (5); *Wynne* v. *Harrell,* 133 *Ga.* 616 (3) (66 S. E. 921); *Griffin* v. *Barrett,* 183 *Ga.* 152, 164 (187 S. E. 828).

■ During the trial the caveator offered in evidence a certified copy of the proceedings in a divorce action brought by the testatrix against her husband in 1921, alleging desertion, from which it appeared that a jury refused to grant her a divorce. The court refused to admit this record in evidence, "except for purpose of impeachment." Error is assigned on this ruling. In this ground of the motion it is alleged that this documentary evidence was a court record antedating the will, when no motive existed for making incorrect or false statements, and was of the highest value in corroborating the oral testimony of the caveator as to his wife's condition. The answer of the defendant in this divorce proceeding denied having deserted his wife, and stated that due to a nervous illness from which she was suffering she had resumed treatment at a hospital at Milledgeville, Georgia, where she was carried by her husband. The court did not err in the ruling complained of, as it does not appear how the admission of this evidence without any restriction could have benefited the caveator in any way.

5. The erroneous disallowance of the offered amendment to the caveat rendered nugatory the further proceedings in the case.

*Judgment reversed. All the Justices concur.*

JENKINS and GRICE, JJ., concurring specially. We agree to the conclusion arrived at, but concur specially in the ruling stated in division 3 of the opinion. There being no issue of imbecility made by the evidence, the evidence for the caveator tending only to show delusional insanity, the charge by the court as set forth in that division was erroneous. Whether the case should be reversed on this ground it is not necessary to decide, since the judgment must be reversed on another ground.