SALIBA *et al.* v. SALIBA; *et vice versa.*

Nos. 15844, 15845. September 9, 1947. Rehearing denied
October 20, 1947.

H. A. Wilkinson, W. L. Ferguson, and R. R. Jones, for plaintiffs in error.

Leonard Farkas and Walter H. Burt, contra.

Bell, Justice. ■ This is the second appearance of the instant case. See Saliba v. Saliba, 201 Ga. 577 (40 S. E. 2d, 511). On March 20, 1946, George Mike Saliba II, an infant, acting by and through another as next friend, filed a petition in the Court of Ordinary of Terrell County, seeking to probate what was alleged to be a true copy of the last will and testament of George M. Saliba, an uncle of the plaintiff, who died. a resident of Terrell County on or about March 5, 1946.

According to the allegations of the petition, the plaintiff's father, John Rogers Saliba, was named as a legatee in the will, but predeceased the alleged testator. This accounts for the interest of the plaintiff in seeking to have the alleged copy of the will probated. Code, § 113-812.

George M. Saliba died without children, leaving a widow, Mrs. Adele George Saliba, as his sole heir at law. She filed an answer

or caveat, putting in issue the allegations of the petition as to the execution of a will and the correctness of the alleged copy. She also filed a demurrer. The case was appealed to the superior court, where general and special demurrers to the petition as amended were overruled, and a verdict was returned in favor of the plaintiff. This court affirmed the judgment overruling the general demurrer, but held that the judge erred in overruling one ground of special demurrer which attacked an amendment to the petition as being duplicitous, one Justice dissenting from the latter ruling, though concurring specially in the judgment or result. *Saliba* v. *Saliba*, 201 *Ga.* 577 (supra).

On return of the case to the trial court, the plaintiff struck the amendment which had been held duplicitous, and amended the original petition so as to plead his case in three counts. Demurrers were filed to each of these counts. The court overruled all grounds of demurrer to the first and second counts, but sustained the demurrer to the third count. The plaintiff again prevailed before a jury, a general verdict being returned in his favor. The defendant's motion for a new trial as amended was overruled, and she excepted. The plaintiff by cross-bill of exceptions complained of the judgment sustaining the demurrer to the third count of his petition and striking that count.

The original petition as thus amended, and now to be treated as count 1, alleged that the will was destroyed before the testator's death without his knowledge or consent; also that the will was witnessed by W. L. Ferguson and two other persons, who were either J. E. King and R. A. Hill, or Miss Annie Timmerman and R. R. Marlin, but that said will was executed and witnessed by three persons as required by law. The defendant demurred to this count upon the ground that it sets forth no sufficient facts to authorize a probate of the alleged will, because (a) said petition as amended fails to allege how or in what manner, when, or by whom the original will of George M. Saliba was destroyed; and (b) because said petition fails to show what three particular persons signed said will as witnesses.

As will be observed, this was a general demurrer. Applying the former decision as the law of the case, the court did not err in overruling it.

The second count, all of which was added by amendment, contained substantially the same allegations as the first count,

except that it alleged that the original will was lost or destroyed *after* the death of the testator. This count was attacked by general demurrer upon the same grounds as the first count, and we make the same ruling so far as these grounds of demurrer are concerned.·

But in paragraph 5 of the second count, it was alleged that a copy of said will is attached hereto marked exhibit A, although actually no exhibit was attached, ·and the°defendant demurred specially to paragraph 5 on this ground.

A general demurrer to a petition is one which attacks the sufficiency of the petition as a whole, contending that it does not state a cause of action for any relief. A demurrer which thus assails a petition in its entirety is a general demurrer, notwithstanding it may allege specific reasons why the petition as a whole should be dismissed. *Sutton* v. *Adams,* 180 *Ga.* 48 (1), 55 (178 S. E. 365). In the instant case, however, the general demurrer was limited to "specific reasons," and none of them assailed the petition as a whole (referring here to the second count) upon the ground that no copy of the will was attached; and we will deal with the demurrers just as they were made by the demurrant, now plaintiff in error. Accordingly, so far as failure to attach the exhibit is concerned, we will, for the purposes of this case, treat the second count as being good against general demurrer, without so deciding, and we will now deal with the special demurrer attacking paragraph 5, for failure to attach such exhibit. But see, in this connection, 1 Page on Wills (2d ed.), 1062, § 639; 68 C. J. 977, § 736; 28 R. C. L. 380, § 384.

It has been held by this court that each count in a petition must contain a complete cause of action, and that it is not permissible to make a paragraph of one count a part of another count by mere reference to the same. *Cooper* v. *Portner Brewing Co.,* 112 *Ga.* 894 (3) (38 S. E. 91); *Train* v. *Emerson,* 137 *Ga.* 730 (74 S. E. 241); *Copelan* v. *Monfort,* 153 *Ga.* 558 (5) (113 S. E. 514). In the instant case, the count under consideration did not even refer to some other part of the petition for the exhibit (*Hightower* v. *Phillips,* 193 *Ga.* 444 (1, 2), 18 S. E. 2d, 848), but alleged that a copy of the will "is hereto attached," when it was not so attached. The court erred in not sustaining this ground of special demurrer. Code, § 81-105; *Allen* v. *Gates,* 145 *Ga.* 652 (4) (89 S. E. 821); *Beecher* v. *Carter,* 189 *Ga.* 234 (4) (5 S. E. 2d, 648).

Nor, since, as we shall see later, a new trial must be ordered for certain errors committed during the trial, is it necessary to determine whether the error in overruling this ground of special demurrer to paragraph 5 should be treated as harmless, under the facts appearing. *Ellis* v. *First National Bank of Atlanta,* 182 *Ga.* 641 (4) (186 S. E. 813); *Harris* v. *Neuman,* 183 *Ga.* 398 (3) (188 S. E. 689); *Fidelity & Deposit Co.* v. *Norwood,* 38 *Ga. App.* 534 (1c) (144 S. E. 387).

There were some additional grounds of demurrer to the second count, and although they were referred to in the statement of facts in part 1 of the brief of counsel for the plaintiff in error, they were not insisted upon or even mentioned in part 2 containing the argument, and are therefore considered as abandoned.

Count 3 of the petition as amended, in paragraph 5, alleged alternatively, as did the original petition, that the original will was destroyed before the testator's death without his knowledge or consent, or was destroyed subsequently to his death; but it contained the further allegation, which did not appear in the original petition, that "for want of information [petitioner] cannot say whether the disappearance of the will occurred before or after the testator's death." The defendant demurred to this count both generally and specially; insisting by special demurrer that paragraph 5 is duplicitous, contradictory, and ambiguous, in that it alleges two alternative and inconsistent theories of recovery, without alleging that either of said theories is true, and without alleging which of said theories the plaintiff relies on for recovery.

The only new question presented here, that is, by the cross-bill of exceptions, is whether such alternative allegations could be properly made when followed by the further averment as to "want of information." In 49 C. J. 98, § 91, it is stated: "Where the pleader has no knowledge as to which of two sets of facts, under either of which the opposite party would be equally liable, exists, he may properly allege them in the alternative." To the same effect, see 41 Am. Jur. 318, § 42. See also the intimation on this point in the former opinion in this case. *Saliba* v. *Saliba,* 201 *Ga.* 577 (supra). However, because of the new averment as to want of information, the law of the case does not apply as to this point. The court erred in sustaining the demurrer to the third count.

While the cross-bill of exceptions would not be considered if the judgment refusing a new trial should be affirmed, yet, as we have

already indicated, a new trial must be ordered, thus necessitating a decision upon the cross-bill, and we therefore determine it here, along with the other questions relating to pleadings; although, since the third count was stricken and the case was tried only upon counts 1 and 2, we will not, in this opinion, be concerned further with count 3.

■ We come now to the motion for a new trial. The evidence was sufficient to show that George M. Saliba did execute a will in the manner and form prescribed by law on some day in February, 1943, and that the copy attached to the original petition was a true and correct copy of that will, except that the original will may have shown the day of the month on which it was executed, whereas such date was not shown in the copy; and except also that it was not witnessed by five persons as indicated by the attached copy, but by only three of the five persons named, and there was some question in the evidence as to whether these three were W. L. Ferguson, J. E. King and R. A. Hill, *or* were W. L. Ferguson, Miss Annie Timmerman and R. R. Marlin.

W. L. Ferguson, an attorney of Dawson, Georgia, testified for the plaintiff: That he drew a will for George M. Saliba, and that the copy attached to the petition is "a correct copy of the will, my copy has no signature of George M. Saliba, and no signature of any witness on it." The witness signed a letter dated April 26, 1946, addressed to Leonard Farkas, Albany, Georgia, which letter was introduced in evidence, and was in part as follows: "My recollection is that the will was signed and witnessed either in my office, or in the bank, and further, my recollection is that Mr. J. E. King, Mr. R. A. Hill, and I were the witnesses. I may be in error. about this, because it might have been witnessed in my office by Miss Timmerman, Mr. Marlin, and myself. However, I am certain that it was signed, executed, and witnessed and turned over to Mr. Saliba." The witness also testified: "To my best recollection, it was properly executed and witnessed, . . signed by the testator and witnessed by three witnesses. . . I delivered the will to George Saliba, the testator, and he took it off with him. . . That is the only will I ever prepared for George Saliba." Also, that the letter is correct "as a whole," although the witness could not "swear positively who witnessed the will."

In special ground 1, error was assigned because the judge with-

held from the jury the following testimony of the witness W. L. Ferguson, which was offered by the movant:

Q. "I want to know of the witness when is the first time he had any conversation with George M. Saliba subsequent to the making of his will in 1943?"

A. "The first time was in the latter part of the summer of 1945."

Q. "What was that conversation?"

A. "The conversation was this: I stated to Mr. Saliba that, if he did not wish the will that I had written for him in February, 1943, to stand, he had better destroy the will, or do away with it, and he replied on the first occasion, 'I will attend to it.' I had almost identically the same conversation with him later on two or three more occasions, and on those occasions he said, 'I have attended to it.' "

Q. "The last time that you discussed the question of a will with George M. Saliba was when?"

A. "The last time was on Friday evening at his home on Lee Street in Dawson, Georgia, about February 8th, 1946."

Q. "In that conversation, what did Mr. Saliba say to you?"

A. "We had almost the same conversation that I have repeated previously in reference to this same will, and he replied to me that he had destroyed that will, referring to the will that I have testified about. I stated to George M. Saliba that he should make another will, and he said, 'No, I will wait until I complete the winding up of the estate of John Rogers Saliba,' which would be completed the first Tuesday in March, 1946. I replied, I said, 'George, you do not have to wait until then to make a will, you can make it now if you see fit.' He said, 'No, I will wait until I get everything wound up and then I will make my will.' "

It was alleged in this ground that said evidence was material to the issues involved in the case, and that its exclusion was hurtful and prejudicial to the defendant because it disclosed a reason for the testator, George M. Saliba, dying without a will, and was in support of the presumption that he had revoked the will a copy of which was being offered for probate.

We think that the court erred in excluding the testimony.

In every case wherein it is sought to have admitted to probate and record a copy of a lost or destroyed will in lieu of the original,

the propounder is confronted with the presumption that the will was revoked by the testator. Code, § 113-611; *Wood* v. *Achey,* 147 *Ga.* 571 (3) (94 S. E. 1021); *Scott* v. *Maddox,* 113 *Ga.* 795 (2), 798 (39 S. E. 500, 84 Am. St. R. 263); *Lyons* v. *Bloodworth,* 199 *Ga.* 44 (33 S. E. 2d, 314); *Looney* v. *Looney,* 199 *Ga.* 415 (34 S. E. 2d, 520). In such a case, declarations of the testator are in this State admissible in evidence either to support or to rebut such presumption, although made at any time between the making of the will and the death of the testator, and although they are not shown to have accompanied any particular act of revocation or attempted revocation; their admissibility not depending upon *res gestae.* See, in this connection, *Patterson* v. *Hickey,* 32 *Ga.* 156; *McIntyre* v. *McIntyre,* 120 *Ga.* 67 (47 S. E. 501, 102 Am. St. R. 71, 1 Ann. Cas. 606); *Rea* v. *Pursley,* 170 *Ga.* 788 (154 S. E. 325); *Ellis* v. *O'Neal,* 175 *Ga.* 652 (3) (165 S. E. 751). While none of these cases involved an attempt to establish and probate a copy of a will, the reasoning in each of them would, as we think, be applicable in a case like the instant one, where no act of revocation was shown, and revocation is presumed merely because of the inherent nature of the case. In *Patterson* v. *Hickey,* supra, the will was found after the testator's death, and its due execution was established, but it was found in an unusual place, and not where the testator was in the habit of keeping his valuable papers. It was cut or torn in two places. This court said: "The law imputes the act to no other person than the testator. In the absence of proof, does not the law presume that the testator destroyed it—*animo revocandi?* And, in such a case, *at least,* will not the *caveators* be permitted to introduce the *parol* declarations of the testator to confirm the legal presumption deducible from the facts themselves? But call this, if you please, an equivocal act. Shall not the testimony of the witnesses, which was offered and rejected, be received for the purpose of ascertaining the intent with which this will was mutilated?"

Thus, after showing that the facts were such as to raise a presumption of revocation, the question was asked whether the caveators should be permitted to introduce a declaration of the testator to ·confirm such legal presumption—which question the court proceeded to answer in the affirmative, holding that the declarations would be admissible although made at any time between the making of the will and the death of the testator. On principle, that decision would seem to be controlling in the instant case.

While the adjudications are not in harmony on the question, the weight of authority appears to be in favor of admitting such evidence. See, in this connection, *Cobb* v. *Battle,* 34 *Ga.* 458; *Burge* v. *Hamilton,* 72 *Ga.* 568 (3), 625; Thornton's Monograph on the Law of Lost Wills, §§ 58, 60, 101; 1 Jarman on Wills 152, § (e); Underhill on the Law of Wills 377, § 277; 28 R. C. L. 383, § 387; Rowland v. Holt, 253 Ky. 718 (70 S. W. 2d, 5); Auritt's Estate, 175 Wash. 303 (27 Pac. 2d, 713); Churchill v. Dill, 145 Kan. 306 (65 Pac. 2d, 337); Bradway v. Thompson, 139 Ark. 542 (214 S. W. 27); Compton v. Dannenbauer, 120 Tex. 14 (35 S. W. 2d, 682, 79 A. L. R. 1488); Goodale v. Murray, 227 Iowa 843 (289 N. W. 450, 126 A. L. R. 1121); Ex parte Newton, 183 S. C. 379 (191 S. E. 59 (6)).

Counsel for the defendant in error cite the following cases as sustaining the ruling of the trial court excluding the evidence: *Hargroves* v. *Redd,* 43 *Ga.* 142, 143 (6); *Jones* v. *Grogan,* 98 *Ga.* 552 (7) (25 S. E. 590); *Kimsey* v. *Allison,* 120 *Ga.* 413 (47 S. E. 899).

In the *Hargroves* case, no facts were proved *which raised a presumption* of revocation. Nor were any acts shown which might amount to a revocation, depending on intention of the testator. It was held that parol evidence was inadmissible to show of itself the revocation of the will. That case is clearly distinguished by its facts from the instant case.

In *Jones* v. *Grogan,* 98 *Ga.* 552 (supra), the will that was filed for probate was attacked by a caveat on the ground that it had been procured by undue influence of a named person. It was held that declarations of the testator which appeared to have been freely and voluntarily made, and which tended to show that the paper propounded as his will had been prepared in accordance with his wishes, and that he was satisfied with it, were admissible in evidence, but that declarations to the contrary, for the purpose of invalidating the paper as his will, were not admissible. Compare *Mallery* v. *Young,* 94 *Ga.* 804 (22 S. E. 142), where a similar ruling was made. There was no presumption to be rebutted or confirmed, and so the present question was not involved in either of those cases. It may be noticed, however, that the case of Jackson v. Kniffin, 2 Johns, 31 (N. Y.) (39 Am. D. 390), was quoted in both of those decisions; the court apparently overlooking the fact that in *Pat-*

*terson* v. *Hickey,* 32 *Ga.* 156 (supra), the decision in that case was carefully considered and rejected as authority.

In *Kimsey* v. *Allison,* supra, the court first in a dictum undertook to state what had been ruled in *Patterson* v. *Hickey* and *Cobb* v. *Battle,* supra, but in doing so unduly restricted those decisions to the principle of *res gestae.* The ruling actually made was that declarations of a testator that his will had been lost or stolen and that it was no longer his will, these declarations not accompanying any act which could be construed as an act of revocation or attempted revocation, are inadmissible. That was a proceeding to probate an *original* will, and there being no presumption of revocation and no act which could be construed as a revocation, the ruling made in that case is similar to that in *Hargroves* v. *Redd,* supra, and does not conflict in any way with what we now hold.

But it is further insisted for the defendant in error that the evidence was properly excluded because it was opinionative, in that it undertook to state the meaning of the words used by the testator in the conversation. Considering the proffered evidence as a whole, it was not subject to such criticism.

Lastly, it is contended that the witness, being an attorney, was disqualified to testify as to conversations with his client, the testator. There is no merit in this contention, as the attorney was not testifying for or against his client or the interest of his client's estate. *Yarborough* v. *Yarborough,* 202 *Ga.* 391 (43 S. E. 2d, 329).

The record in the instant case shows that the plaintiff himself, without objection, introduced evidence of many statements by the testator not accompanying any act, for the purpose of rebutting the presumption of revocation, and leaned heavily upon this type of evidence. The rule is that declarations of the testator, if any, may be shown either to confirm or rebut such presumption. In other words, the rule works indifferently both ways.

■ Special ground 2 assigned error on a ruling admitting in evidence a copy of the return of appraisers setting aside $25,000 as a year's support to the widow and minor child of John Rogers Saliba, and a copy of the judgment of the court of ordinary admitting such return to record as the judgment of the court. In special ground 4, error was assigned on a ruling admitting in evidence a receipt for $25,000 dated December 6, 1945, and signed by Mrs. John R. Saliba, "in full and complete payment and settlement of

all present and future claims for a year's support out of said estate, and in full and complete payment of all and every right, title, and interest which the undersigned and the said George Mike Saliba II has, in and to the estate of the said John R. Saliba, deceased," and a signed waiver of dower bearing the same date. In special ground 5, the movant complained that the court erred in admitting in evidence a certified copy of the proceedings before the court of ordinary in probating the will of John R. Saliba, including a copy of such will, the will having been probated January 1, 1945.

In each of these grounds, it appears that the evidence therein referred to was admitted over objection of the movant that it was not relevant or material to any issue in the case, and was prejudicial.

If the evidence shown in special ground 2 had stood alone, it might have been irrelevant, but when considered with the evidence set forth in special grounds 4 and 5 and other evidence in the record, we think that it was relevant and admissible; nor was there any error in admitting the evidence as shown in special grounds 4 and 5.

There was evidence to the effect that George M. Saliba and John Rogers Saliba had agreed to make mutual wills, and had done so, each being named as a legatee in the will of the other. It appears from the evidence that—although the present plaintiff, child of John Rogers Saliba, was born after his father's will was executed, and no provision was made in contemplation of such event, so that the will of the latter was thereby revoked (Code, § 113-408; *Saliba* v. *Saliba,* 201 *Ga.* 577, 40 S. E. 2d, 511)—nevertheless, George M. Saliba, as the principal legatee, proceeded to have the will probated by a consent judgment, and thereafter paid to the widow, Mrs. Mary Sheffield Saliba, $25,000 as a year's support for herself and minor child, in settlement of a suit which she had brought to set aside such judgment probating the will. The waiver of dower was a part of the same settlement transaction. In reference to this payment, Mrs. Mary Sheffield Saliba testified that, when George M. Saliba paid the $25,000 to her, he told her that it was hers and she could spend it if she wanted to, that he was going to see that the baby was taken care of as long as he lived, and at his death it would be taken care of by his will. So, all of the evidence set forth in special grounds 2, 4, and 5 was admissible for the purpose of showing that George M. Saliba had made a will that would inure to the

benefit of the minor child, and also as showing circumstances tending to illustrate the probability or improbability of his later revoking such will. In other words, if he obtained probate of his brother's will and was thereafter willing to pay $25,000 as a year's support in order to keep it probated, it seems that these facts would have some bearing on whether he desired and intended to carry out the plan or agreement which the evidence tended to show he had made with his brother as to the execution of mutual wills. Accordingly, special grounds 2, 4 and 5 do not show error. Ground 6 raised a similar question, and is controlled by this ruling.

■ In special ground 3, the movant contended that the court erred in admitting in evidence a warranty deed executed by Mrs. Adele George Saliba, as the wife and sole heir at law of G. M. Saliba, and conveying to Mrs. Camilla Saliba Shibley (a sister of the testator), as trustee for George Mike Saliba II (the plaintiff) and four named children of Mrs. Shibley, certain real estate in Dawson, Georgia. The same ground also assigned error upon a ruling admitting another deed by Mrs. Adele George Saliba to Mrs. Camilla Saliba Shibley individually, both deeds being dated March 14, 1946. This ground of the motion alleged that "both of the two aforesaid deeds recite that the grantor, Mrs. Adele George Saliba, is the widow and sole surviving heir at law of G. M. Saliba, who died intestate, without a will, a resident of Terrell County, Georgia, and said deeds are made for the purpose of conveying all the right, title and interest of either G. M. Saliba, or Mrs. Adele George Saliba, in and to said described property."

The movant objected to the introduction of said deeds at the time they were offered in evidence, on the ground that they were not relevant or material to the issues involved in the case, and were prejudicial, harmful, and confusing, and not legal evidence on the issue of whether this is George M. Saliba's will or not.

In special ground 7, the defendant complained that the court erred in admitting testimony of J. H. Fletcher, the ordinary, as follows: Q. "Didn't Mrs. George Saliba tell you that when she was in Rochester with her husband that he told her that he had a will?" A. "That is my understanding, he told her that he had a will. That is what she said." This testimony was objected to as being hearsay and secondary, Mrs. Saliba being at the time in the court and available as a witness.

We will consider these two grounds (3 and 7) together. Mrs. Saliba as the widow and sole heir at law of George M. Saliba would have inherited his entire estate, if there was no will. Whether or not the testimony of Mr. Fletcher was admissible as showing an admission by her against her interest, it was relevant and admissible as a circumstance to be considered with other evidence, relating to motive and conduct. There is evidence in the record to the effect that Mr. Saliba died about March 5, 1946, while a patient at a clinic or hospital in Rochester, Minnesota. If Mrs. Saliba did, as the witness testified, receive information from her husband that he had made a will, this fact would be relevant and admissible as illustrating her motive in executing the two deeds in question only nine or ten days after his death.

The evidence set forth in these two grounds of the motion thus tended to show a state of mind unfavorable to the will, together with a purpose to defeat it. Why act with such haste in conveying the property as heir at law, especially if she had been told by her husband that he had made a will? The evidence presented this question, and it was a pertinent one for consideration by the jury. *Scott* v. *Maddox,* 113 *Ga.* 795, 798 (39 S. E. 500, 84 Am. St. R. 263) ; 1 Page on Wills (2d ed.), 1322, § 776; Hood on Wills 225, § 357.

Special grounds 3 and 7 do not show cause for a new trial.

No such questions were involved in the cases cited for the plaintiff in error in reference to these grounds: *Wallace* v. *Spullock,* 32 *Ga.* 488; *Augusta Factory* v. *Barnes,* 72 *Ga.* 217, 218 (6) (53 Am. R. 838).; *Chedel* v. *Mooney,* 158 *Ga.* 297 (7) (123 S. E. 300).

In special ground 8, it was alleged that the court erred in admitting in evidence a carbon copy of the purported will of George M. Saliba, over the objections that the paper so offered was not complete as a will, and that there was not sufficient testimony to show what three particular persons witnessed the will. ...

A sufficient answer to this ground would be that the introduction of this carbon copy *tended* to prove an allegation in the petition, and it was therefore admissible in evidence, notwithstanding it was not within itself complete as a will, and whether or not there was sufficient testimony to show what three particular persons witnessed the will. *Kelly* v. *Strouse,* 116 *Ga.* 872 (2) (43 S. E. 280) ; *Cook County* v. *Thornhill Wagon Co.,* 189 *Ga.* 360 (2) (5 S. E.

2d, 881); *Carter* v. *Marble Products,* 179 *Ga.* 122 (3), 127 (175 S. E. 480); *Livingston* v. *Barnett,* 193 *Ga.* 640 (2), 651 (19 S. E. 2d, 385). But since the contention is several times made in the record, that the evidence as a whole was not sufficient to show what three particular persons witnessed the will, and since we are of the opinion that such contention is not well founded as a matter of fact, we will proceed to deal with it at this point, although in doing so we do not mean to imply that a mere failure to prove what three particular persons witnessed the will would be fatal to the plaintiff's case, in view of other circumstances proved, including evidence to the effect that it was witnessed by three of five particular persons, all of whom were called and testified, as shown in the statement. As we view the case, no decision is necessary as to the latter question, and therefore none will be made.

As shown in division 2 of this opinion, the testimony of W. L. Ferguson, the attorney who drew the will, when considered in connection with a letter he had written to Mr. Farkas, attorney for the plaintiff, was substantially as follows: That according to his recollection, the will was signed either in his office or in the bank, and that he, J. E. King, and R. A. Hill were the witnesses, other evidence showing that the two last-named persons were employed in the bank. He stated further, however, that he might be in error about this, because the will might have been witnessed by himself and his secretary, Miss Timmerman, and R. R. Marlin, in his office, and that while he could not swear positively who were the witnesses, the letter he had written to Mr. Farkas containing these statements was correct "as a whole." All of the persons named by him as possible witnesses were called and testified, but none of them had any recollection as to whether they had witnessed the will or not. Mr. Ferguson further testified that the date of this will (evidently referring to the copy) was left the "blank" day of February, 1943, because the will was not executed at the time and on the same date it was drafted and written. This statement did not detract in any way from what he had previously testified. His secretary, Miss Timmerman, testified that, while she could not say positively, she thought that, if the testator had been going to sign the will "in our office, we would have typed the date of the month in there and not left it blank." This testimony tended to support the "recollection" of Mr. Ferguson to the effect that the

will was witnessed by himself, R. A. Hill, and J. E. King; and from the evidence as a whole the jury were authorized to find, and to do so under the clear-proof rule, that the will was in fact signed by these three particular individuals as witnesses.

Moreover, a witness can never testify truthfully as to any past transaction with which he was connected, *except from his recollection,* and so, a jury is not required to find against the declared recollection of a witness merely because he states that he may be in error and cannot swear positively—thus recognizing that his memory, like that of the average person, may not be infallible. See, in this connection, *Fletcher* v. *Gillespie,* 201 *Ga.* 377 (4) (40 S. E. 2d, 45); *Turner* v. *Hardy,* 198 *Ga.* 626 (4), 642 (32 S. E. 2d, 483); *Matthews* v. *Richards,* 19 *Ga. App.* 489 (4) (91 S. E. 914); *Ætna Insurance Co.* v. *Trimmier,* 42 *Ga. App.* 745 (157 S. E. 340; *Barrington* v. *Jenkins,* 44 *Ga. App.* 682 (4) (162 S. E. 642); *Carter* v. *Ray,* 70 *Ga. App.* 419 (4), 427 (28 S. E. 2d, 361).

It follows that there is no merit in special ground 8. In this view, as we have already indicated, we need not determine whether the plaintiff, in order to prevail, would be *bound* to prove what three particular persons witnessed the will, in view of all the evidence in the record relating to the matter of witnessing; but in reference to that question see Code, §§ 38-212, 38-706; *Gillis* v. *Gillis,* 96 *Ga.* 1 (2), 14-18 (23 S. E. 107, 30 L. R. A. 143, 51 Am. St. R. 121); *Felton* v. *Pitman,* 14 *Ga.* 530 (1, 2); *Burge* v. *Hamilton,* 72 *Ga.* 568 (2f); *Saliba* v. *Saliba,* 201 *Ga.* 577 (40 S. E. 2d, 511), special concurrence; Thornton's Monograph on the Law of Lost Wills, 68, 69, 137, §§ 44, 45, 101; 1 Jarman on the Probate of Wills (Perkins' ed.) 223; Dan *v.* Brown, 4 Cowen (N. Y.) 483 (15 Am. D. 395); In re Resencrantz's Estate, 191 Wis. 109 (210 N. W. 371); In re Estate of C. R. Phibbs, deceased, Law Reports (Eng.) Probate Division, page 93 (1917); Gaines *v.* Henning, 65 U. S. 553 (16 L. ed. 770, 772).

■ At the close of the evidence, counsel for the defendant requested the court to require the plaintiff to elect upon which of the two counts he would ask a verdict. The court refused the request, and this ruling is complained of in special ground 9. There is no merit in this ground. The plaintiff, though pleading his case in two separate counts, relied upon one and the same cause of action in both, merely varying the circumstances under which

he might be entitled to recover according to the evidence. "It is a familiar rule of pleading that when the plaintiff has two or more distinct reasons for obtaining the relief sought, or when there is more or less uncertainty as to the grounds of recovery or as to the exigencies of proof, the petition may set forth a single claim in more than one count. The pleader may state his case in as many ways as he sees fit in separate counts, and he will not be required to elect on which count he will proceed." 41 Am. Jur. 363, § 106. This statement accords with the practice in this State both in civil and criminal cases. In *Gainesville & Dahlonega Electric Ry. Co.* v. *Austin,* 127 *Ga.* 120 (1, 4) (56 S. E. 254), it was held that the plaintiff, suing to recover damages for a personal injury, could embrace in his petition two or more separate counts, setting forth different accounts of the manner in which he was injured, so as to meet any anticipated variations in the proof which might be adduced at the trial; and that it was not incumbent on the court, in its charge to the jury, to deal separately with the two counts in the petition, as though two distinct and independent cases were on trial, nor to instruct the jury to inform the court on which count they found, in the event they returned a verdict in favor of the plaintiff. See also *Simmons* v. *State,* 162 *Ga.* 316 (134 S. E. 54); *Black* v. *State,* 34 *Ga. App.* 449 (130 S. E. 591); *Forrester* v. *State,* 46 *Ga. App.* 658 (168 S. E. 791). The decisions in the following cases dealt with election under facts and circumstances materially different from those in the present case and are therefore not in point. *Southern Ry. Co.* v. *Hardin,* 107 *Ga.* 379 (33 S. E. 436); *Southern Ry. Co.* v. *Chambers,* 126 *Ga.* 404 (5) (55 S. E. 37, 7 L. R. A. (N. S.) 926); *Blanchard* v. *Tucker,* 34 *Ga. App.* 405 (129 S. E. 908).

But the plaintiff in error also relies upon the following statement contained in the former decision in this case: "The defendant, by his renewed special demurrer having been entitled to put the plaintiff to an election as to which of the two alternative theories he relies upon as a basis of recovery . . and the court by overruling this demurrer having denied this right, all subsequent proceedings became nugatory." This statement was referring to the right of the defendant, by demurrer, to require the plaintiff to elect, as a matter of pleading, on which of two alternative theories he would rely in his petition, which at that time contained only a

single count, and has no application to the question of election as presented now in the motion for a new trial.

■ In special ground 10, the movant complained of the following excerpt from the charge of the court: "The burden of proof, that is, the burden of proving the truth of the case rests upon the propounder, and it must be proven by a preponderance of evidence except as hereinafter stated. A preponderance of evidence means that superior weight of the evidence upon the issues involved, which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other; a greater degree of proof is required to establish a copy of an alleged lost will, and the propounder must clearly prove the contents of the will, and the signature of the testator and the witnesses thereto;" and along with this excerpt the movant assigned as error the next succeeding paragraph of the charge on credibility of witnesses and preponderance of evidence.

In this ground, the movant contended that the foregoing "charge" (referring to both excerpts) is erroneous and contrary to law, for the reason that the propounder had the burden of clearly proving (1) that the paper attached to the petition as an alleged copy of the will was actually executed by the testator in the manner provided by law, that is, in the presence of three witnesses; (2) that said copy was actually a copy of said will, and (3) that the alleged will was lost or destroyed before the testator's death, without his consent, or was lost or destroyed subsequently to his death. The movant further contended that the plaintiff had the burden of clearly proving every issue involved in the case, and that there were no issues which the propounder could simply prove by a preponderance of the evidence.

It was also contended that the portion of the charge, "a greater degree of proof is required to establish a copy of an alleged lost will, and the propounder must clearly prove the contents of the will, and the signature of the testator and the witnesses thereto," was erroneous and contrary to law, for the reasons: (a) that proving the signature of the testator and the witnesses thereto relates to an original will with the actual signatures thereon; (b) that the uncontradicted evidence showed that the alleged copy of the will did not have the signature of G. M. Saliba on it, nor did it

have the signature of any of the subscribing witnesses, and therefore this portion of the charge was not authorized by the evidence; (c) that it deprived the defendant of the benefit of the presumption of revocation.

The court elsewhere gave in charge the entire section of the Code as to probating a copy of a lost will (Code, § 113-611), and when the charge is considered as a whole, there is no merit in any of these assignments of error. *Fletcher* v. *Gillespie,* 201 *Ga.* 377 (40 S. E. 2d, 45); *Christopher* v. *Mooty,* 155 *Ga.* 286 (3) (117 S. E. 90). Special ground 11 was abandoned.

■ Special ground 14 assigned error on the following charge: "I charge you that the presumption in favor of revocation may be rebutted by showing that the will was not destroyed by the testator, or by his direction, and in his presence, or that if he did it, he did not thereby intend to revoke the will. Evidence of this sort may be circumstantial, as well as direct. You may consider the relation and circumstances of the parties; also the declarations of the testator made freely and voluntarily, if you believe he made any such declarations, tending to show that he had a will and that he was satisfied with it; also all the evidence that has been admitted that would prove to your satisfaction, under the rules of law I have given you in charge and will give you in charge, that the will was not revoked."

This entire charge was attacked as being an expression of opinion by the court as to the weight and sufficiency of the evidence. It was contended also that declarations by the testator that he had a will could not be considered by the jury, unless such declarations related to the particular will, and in view of certain evidence set out in this ground of the motion, the declarations of the testator did not, as the movant contends, relate to the particular will, copy of which was sought to be probated, and therefore such declarations by the testator should not have been considered by the jury on the question as to whether the presumption in favor of revocation had been rebutted.

It was further contended that no evidence was produced that the will had not been destroyed by the testator, and that the charge that the presumption of revocation could be rebutted by showing that the testator did not destroy the will was without any evidence to support it; that the declarations made by the testator, that he had

a will and was satisfied with it, were not sufficient to rebut the presumption that he had revoked his will, since there was no testimony whatever as to what became of the original will after it was delivered to the testator. It was also contended that the portion of the charge, "I charge you that the presumption in favor of revocation may be rebutted by showing that the will was not destroyed by the testator, or by his direction, and in his presence, or that if he did it, he did not thereby intend to revoke the will," created in the minds of the jury, in the absence of any evidence, that the burden was on the defendant to show that the will was not destroyed by the testator, by his direction and in his presence, or that if he did it, he did not thereby intend to revoke the will.

The Code contains several provisions as to the manner in which a will may be revoked, among which are the following: "An express revocation may be effected by any destruction or obliteration of the original will or a duplicate, done by the testator or by his direction with an intention to revoke." Code, § 113-404. "In all cases of revocation, the intention to revoke is necessary to make it effectual. An express clause of revocation will not operate upon a testamentary paper where it is manifest that such was not the intention." § 113-405.

In *Wood* v. *Achey*, 147 *Ga.* 571 (3) (94 S. E. 1021), it was said that the presumption of revocation, in a case of this kind, may be rebutted, among other ways, by proof that a will was lost or destroyed prior to the death of the testator without his consent, and that, "where evidence to such effect is submitted, the question whether the presumption has been overcome is for determination by the jury in view of all of the evidence and circumstances in the case, and the credibility attributed by the jury to the witnesses." Manifestly, such rebuttal could be made by circumstantial as well as by direct evidence, and in a case like the present, where the direct evidence traces a will into the custody of the testator and there stops, it seems that the propounder can only assert that whatever may have happened to the will after its delivery to the testator, he did not revoke it, and then submit circumstantial evidence, including declarations of the testator, if any, in support of such assertion. Also, in such a case, the judge may instruct the jury to the effect that the presumption in favor of revocation may be rebutted by showing that the will was not destroyed by the testator,

or that if he did destroy it, he did not thereby intend to revoke the will; provided only that such an instruction, like others, must be supported by sufficient evidence. The circumstantial evidence here was sufficient to support the charge in question. See authorities cited in division 2, supra: also *Keener* v. *State,* 18 *Ga.* 194 (5) (63 Am. D. 269); *National Life & Accident Ins. Co.* v. *Hankerson,* 49 *Ga. App.* 350 (7) (175 S. E. 590); *Martin* v. *Dews,* 73 *Ga. App.* 73, 76 (35 S. E. 2d, 577); 2 The American Law of Administration (Woener, 3d. ed.), p. 741, § 221; Rood on Wills, p. 225, § 357; Jackson *v.* Hewlett, 114 Va. 573 (77 S. E. 518).

Nor was the charge as to declarations of the testator, in reference to having made a will and being satisfied with it, subject to exception because it did not expressly restrict the jury to the particular will, a copy of which the propounder sought to probate. The charge was not reasonably susceptible of the construction that the statements could be considered regardless of whether they related to the particular will or not; and therefore, if the defendant had desired a charge containing such an express restriction, a request therefor should have been made. The evidence was sufficient to authorize a finding that the statements of the testator did have reference to that particular will. See division 12, infra.

There is no contention that the last clause in the foregoing excerpt following the last semicolon, and containing the expression "that would prove to your satisfaction," violated the "dumb act."

There is no merit in special ground 14.

■ Special ground 15 assigned error on the following charge: "I further charge you that the proper execution of a will may be proved by competent testimony, provided the attesting witnesses are produced and examined. The inquiry, as in other cases, is whether, taking all the testimony together, the execution is duly established. It is not required that any one or more of the essential facts should be proved by all or any number of the attesting witnesses. The law does not allow proof of the valid execution and the testation of a will to be defeated at the time of probate by the failure of the memory on the part of any of the subscribing witnesses."

The charge here quoted would be correct as applied to an application to probate an original will, and there is no contention to the contrary. The assignments of error all go to the point that it

was inapplicable and erroneous in the instant proceeding to probate an alleged *copy* of a will.

In *Fletcher* v. *Gillespie,* 201 *Ga.* 377 (supra), it was said that the provision of the Code, § 113-611 as to clear proof "by the subscribing witnesses and other evidence" no more limits proof of the execution of a will to the testimony of the subscribing witnesses than does § 113-602, relating to probate in solemn form. Since the provision just mentioned as to probate of a copy follows the procedure for probating an original will, except that it adds the clear-proof rule, there was no error in giving in charge the basic rule. The charge did not contain an expression of opinion as to the weight that should be given to the evidence in the case, as insisted.

■ In special ground 16, the movant complained of the following charge: "Where the attesting clause recites all of the facts essential to its due execution as a will, and it is shown by sufficient evidence that the alleged testator and the witnesses affixed their signatures to the paper, the presumption arises that it was executed in the manner prescribed by law, and this is so, though one or more other witnesses testified that they have a total failure of memory as to some or all of the circumstances attending the execution."

This charge was a correct statement of the law applicable to the probate of an original will, and since there was evidence to the effect that the original will was signed by the testator and attested by three particular persons as witnesses, the judge did not err in stating this rule of law to the jury for their consideration in connection with the testimony as to execution and witnessing.

The first exception to this charge presented the contention that it was not applicable to probate of a copy of a lost or destroyed will, and the remaining exceptions proceeded upon the same theory. None of them showed error. *Wells* v. *Thompson,* 140 *Ga.* 119 (4) (78 S. E. 823, 47 L. R. A. (N. S.) 722, Ann. Cas. 1914C, 898); *Shewmake* v. *Shewmake,* 144 *Ga.* 801 (4) (87 S. E. 1046); *Wood* v *Davis,* 161 *Ga.* 690 (3) (131 S. E. 885); *Scott* v. *Wimberly,* 185 *Ga.* 561 (2) (195 S. E. 865).

■ Special ground 19 assigned error on the following charge: "I charge you, gentlemen of the jury, that under the rules of law I have given you in charge, if you believe that George M. Saliba intentionally destroyed his will, then it would be your duty to find

against the will, and the form of your verdict should be, 'We, the jury, find against the will.' On the other hand, if you should believe that George M. Saliba did not intentionally destroy his will, then the form of your verdict should be, 'We, the jury, find in favor of the will.'" This charge was assigned as error upon four grounds, designated as (a), (b), (c), and (d).

Exception (d) presented the contention that this charge deprived the defendant of the right to have the alleged will clearly proved, and was tantamount to directing the jury to find that the execution of the alleged copy of the will had been clearly shown by the evidence. This is the only contention referred to in the brief for the plaintiff in error as related to this ground of the motion, and therefore the other assignments of error will not be considered.

In the last sentence of the excerpt as just quoted, the judge instructed the jury that, if they should believe that George M. Saliba did not intentionally destroy his will, then the form of the verdict should be, "We, the jury, find in favor of the will." This was error.

The case could not be concluded in favor of the plaintiff by a mere finding that the testator did not intentionally destroy his will; but, over and beyond that, it would be necessary to find that the plaintiff had clearly proved the alleged copy "to be such." Code, § 113-611; *Fletcher* v. *Gillespie*, 201 *Ga.* 377 (4) (supra). Accordingly, this ground of the motion, so far as insisted upon in this court, was well taken and should have been sustained.

Other portions of the charge were assigned as error in the remaining grounds of the motion, to wit, 12, 13, 17, 18, 20, and 21. The most of these exceptions are controlled adversely to the plaintiff in error by rulings heretofore made in this opinion. All of them, on examination, are found to be without substance.

■ We consider now the general grounds of the motion for a new trial. We have been virtually required to pass upon the question as to whether the evidence introduced was sufficient to support the verdict, in dealing with several special grounds, particularly ground 14, division 8, supra, and we may say finally that we think the verdict was so authorized.

The testator himself had no child. Several witnesses testified that they had heard him express great affection and concern for this plaintiff, who was the infant child of his deceased brother.

The evidence also shows that many statements were made by him to different persons, at different times, some not long before his death, to the effect that he intended to provide for the child, and that he had made a will which would take care of it. We do not here undertake to state his exact words, but merely state their general meaning and import, according to what the jury could have found from the evidence. It is true that he did not at any time describe in specific terms the provisions of the particular will in question, and some of his statements may not have tallied in all respects with it. Yet the evidence was sufficient to authorize a finding, under the clear-proof rule, that he did execute the identical will, a copy of which was sought to be probated; and there being nothing to show that he ever executed a subsequent will, it was a legitimate inference that, in all statements in which he referred to a will, he was referring to this particular will. Considering the evidence as a whole, which included some relevant facts and circumstances in addition to these statements of the alleged testator, we think that the evidence was not only sufficient to meet the requirements of the law as to clear proof of the alleged copy, but also to rebut the presumption of revocation, and to authorize the verdict finding for the plaintiff. See authorities cited in divisions 2, 4, 8, supra.

Nevertheless, for the reasons stated in divisions 2 and 11, pointing out errors in the trial, the motion for a new trial should have been granted.

*Judgments reversed on the main and cross-bills of exceptions. All the Justices concur except Wyatt, J., who took no part in the consideration or decision of this case.*

DUCKWORTH, P. J., concurs in the judgments of reversal for reasons stated in the opinion, but dissents from the rulings in headnotes 5 and 12 and corresponding divisions of the opinion as to the sufficiency of the evidence to show what three particular persons witnessed the will and to support the verdict.